HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PROJECT STEWART LLC, a Delaware limited liability company,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>JPMORGAN CHASE BANK, N.A., a Delaware corporation,<br><br>　　　　　Defendant. | Case No. 2:21-cv-00381-RAJ<br><br>**ORDER** |

## I.    INTRODUCTION

This matter comes before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, for Failure to State a Claim. Dkt. # 16. Plaintiff filed a response. Dkt. # 20. The Court granted Plaintiff additional time to conduct limited jurisdictional discovery and re-noted the pending motion. Dkt. # 25. Plaintiff filed a supplemental response and requested additional time to conduct a Federal Rule of Civil Procedure 30(b)(6) deposition. Dkt. # 27. Having reviewed the briefing, relevant record, and applicable law, the Court denies Plaintiff's request and **GRANTS** the motion to dismiss for lack of personal jurisdiction.

ORDER – 1

## II. BACKGROUND

Plaintiff Project Stewart LLC ("Plaintiff") is a Delaware limited liability company with its principal place of business in King County, Washington. Dkt. # 1-1 ¶ 1. Plaintiff owns the 1200 Stewart Street Project (the "Project") under construction in the Denny Triangle area of Seattle. *Id.* ¶ 8. The Project consists of two 48-story residential towers over a three-story podium. *Id.* ¶ 9. Plaintiff hired Graham Construction & Management, Inc. ("Graham") as the general contractor for the Project. *Id.* ¶ 10. Graham entered into a subcontract with Metal Yapi Holding AS ("Metal Yapi") for performance mock up testing of the low rise curtain wall and window wall systems for the Project. *Id.* ¶ 14.

Plaintiff alleges that Metal Yapi refused to provide payment and performance bond as security for its work. *Id.* ¶ 18. As an alternative security to payment and performance bonds, Metal Yapi agreed to provide redeemable standby letters of credit for the direct benefit of Plaintiff. *Id.* ¶ 19. Metal Yapi agreed to obtain two separate irrevocable stand-by letters of credit in a form approved by Plaintiff and redeemable by Plaintiff. *Id.* ¶ 20. Metail Yapi contacted Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "JPMC") to seek the two letters of credit. *Id.* ¶ 21.

On March 5, 2020, JPMC issued two letters of credit identifying Plaintiff as the beneficiary. *Id.* ¶ 22. The first letter of credit ("LC#1") was intended as security for the advance deposit of $4,102,299. *Id.* ¶ 30. LC#1 explained the draw process, which required Plaintiff to submit a draw certificate and a copy of an MT 103[1] proving payment of the $4,102,299 advance to an account held with Turkiye Garanti Bankasi A.S., Topkapi Ticari Branch. Dkt. # 1-1 at 17. Graham advanced the sum to Metal Yapi secured by LC#1. *Id.* ¶ 31.

---

[1] "An MT 103 is a standardized SWIFT [Society for Worldwide Interbank Financial Telecommunications] payment message used by banks for cross boarder/international wire transfers. They are globally accepted as proof of payment and are to include payment details such as date, amount, currency, sender, and recipient." Dkt. # 16 at 10 n.3).

ORDER – 2

   Plaintiff alleged that it became concerned that Metal Yapi's performance was significantly delayed.  *Id.* ¶ 32.  On or around May 29, 2020, Plaintiff attempted to draw upon LC#1 and presented a draw certificate to JPMC.  *Id.* ¶¶ 333-34.  On June 4, 2020, Plaintiff received a notice from JPMC refusing the draw request, noting that the documents were not presented as per the terms and conditions of the letter of credit.  *Id.* ¶ 35.  Plaintiff alleges that JPMC's notice failed to list all of the discrepancies in Plaintiff's draw request and the nature of such discrepancies, so as to allow Plaintiff to make an effective presentation.  *Id.* ¶ 37.

   On or about June 8, 2020, Plaintiff presented a revised draw certificate to draw up on the lesser amount of $3,897,117.55, which is the amount Graham paid to Metal Yapi.  *Id.* ¶ 38.  On June 10, 2020, Plaintiff received another refusal from JPMC indicating that the documents were not presented as per terms and conditions of the letter of credit and referred Plaintiff to "item no. 2" in LC#1.  *Id.* ¶ 39; Dkt. # 1-1 at 20.  In response, Plaintiff obtained an MT 103 payment message showing the bank name where Graham wired the advance to JPMC.  *Id.* ¶ 42.  On June 12, 2022, Plaintiff presented a revised draw certificate once again.  *Id.*

   JPMC again denied Plaintiff's request in a notice dated June 16, 2020.  *Id.* at ¶ 43; Dkt. # 1-1 at 24.  JPMC identified two issues with Plaintiff's draw certificate: (1) the MT 103 did not include the branch name of the bank as stated in LC#1, and (2) the amount in the MT 103 did not reflect the amount stated in LC#1.  *Id.* ¶ 43.  Plaintiff subsequently engaged in additional investigation and determined that it could not obtain an MT 103 with the "Topkapi Ticari Branch" designation because the branch name auto-populates in the MT 103 wire record.  *Id.*

   On June 25, 2020, counsel for Plaintiff sent a letter to JPMC inquiring how the draw conditions in LC#1 could be satisfied.  *Id.* ¶ 46.  In the letter, Plaintiff's counsel explained that the draw provision in LC#1 requiring Plaintiff to provide a copy of an MT 103 evidencing payment of $4,102,299 to an account held at "T. Garanti Bankasi A.S.,

ORDER – 3

Topkapi Ticari Branch, making reference to guarantee of Turkiye Garanti Bankasi . . . ." was an unauthorized change to the letter of credit. *Id.* at 26. According to Plaintiff, the provision was added after Plaintiff approved the form of the letter of credit. *Id.* Plaintiff's counsel also explained that the amount in the provision was incorrect, as the actual advance payment was $3,897,117.55, and that the MT 103 contains no field in which reference could be made to "guarantee of Turkiye Garanti Bankasi." *Id.* JPMC did not respond. *Id.* ¶ 48. A week later, Plaintiff's counsel again sought a response from JPMC. *Id.* ¶ 49. Again, JPMC did not respond. *Id.* ¶ 51.

On February 26, 2021, Plaintiff filed a complaint against JPMC in King County Superior Court. Dkt. # 1-1. It was removed on March 19, 2021. Dkt. # 1. On June 11, 2021, JPMC filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state a claim. Dkt. # 16. JPMC also filed a motion to stay discovery. Dkt. # 17. The Court granted JPMC's motion to stay in part, allowing Plaintiff an opportunity to conduct limited jurisdictional discovery. Dkt. # 25 at 2. Specifically, the Court allowed Plaintiff to conduct jurisdictional discovery concerning: (1) all communications between JPMC and Metal Yapi regarding Metal Yapi's procurement of and/or JPMC's issuance of the two letters of credit; and (2) the location of all of JPMC's offices that were involved in issuing the letters of credit. *Id.* JPMC's motion to dismiss for lack of personal jurisdiction was re-noted and Plaintiff was allowed to file a supplemental response.

Plaintiff filed a timely response asserting that JPMC had failed to fully respond to Plaintiff's requests for jurisdictional discovery. Dkt. # 27 at 3. Plaintiff now moves the Court to re-note the motion to dismiss for lack of personal jurisdiction to allow Plaintiff to conduct a Federal Rule of Civil Procedure 30(b)(6) deposition of JPMC on jurisdictional matters identified in the Court's order. *Id.*

### III. DISCUSSION

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff

ORDER – 4

bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Federal courts apply state law when determining whether personal jurisdiction over a defendant is proper. *Id.*; Fed. R. Civ. P. 4(k)(1)(A). Washington's long-arm statute, RCW 4.28.185, "extends jurisdiction to the limit of federal due process." *Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 771, 783 P.2d 78, 82 (1989). Due process requires that a non-resident defendant have "certain minimum contacts with [the territory of a forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

Two forms of personal jurisdiction exist to permit a court to exercise jurisdiction over an out-of-state defendant: (a) general personal jurisdiction, and (b) specific personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). The Court will consider each in turn.

**A. General Jurisdiction**

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). Because "a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world," courts impose an exacting standard when determining whether personal jurisdiction exists over a defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). "The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (citing *Daimler*, 571 U.S. at 760). General jurisdiction may be found elsewhere in an

ORDER – 5

"exceptional case," but "[a] corporation that operates in many places can scarcely be deemed at home in all of them." 571 U.S. at 761 n.19 & 762 n.20.

Although JPMC is a national banking association, district courts have consistently applied the same rule regarding general jurisdiction to national banking institutions as to corporations. A national bank is a citizen "of the State in which its main office, as set forth in its articles of association, is located." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006). JPMC's articles of association establish that its main office is located in Columbus, Ohio. Dkt. # 16-2. Accordingly, JPMC is subject to general jurisdiction only in Ohio unless Plaintiff can demonstrate that this case is an exceptional one.

Here, Plaintiff argues that JPMC's substantial and continuous business dealings in Washington render it at home in the state. In support of this argument, Plaintiff directs the Court to JPMorgan Chase & Co.'s website, where Seattle is listed as one of 14 cities "with an impact." Dkt. # 21. JPMC maintains 85 branches, more than 1,000 local employees, and serves 818,000 customers in Washington. Dkt. # 20 at 11 (citing Dkt. # 21). Additionally, Plaintiff notes, JPMC is "working to become more than just a trusted banking partner in the region" through collaboration with the University of Washington, a partnership with the Seattle Housing Authority, and relationships with other local non-profits. *Id.*

District courts have concluded, however, that a banking institution's substantial operations in a jurisdiction are insufficient to establish general jurisdiction. *See First Nat'l Bank of Pennsylvania v. Transamerica Life Ins. Co.*, No. CV 14-1007, 2016 WL 520965, at *4–7 (W.D. Pa. Feb. 10, 2016) (finding no general jurisdiction over JPMC in Pennsylvania despite it having filed lawsuits there in federal and state courts, millions of dollars in revenue from business activities in the state, and an office in the state); *U.S. Bank Nat'l Ass'n v. Bank of Am., N.A.*, 14–cv–01492, 2015 WL 5971126, at *7–8 (S.D. Ind. Oct. 14, 2015) (holding that the Indiana district court lacked general jurisdiction over Bank of America despite its substantial business activity in the state), *rev'd on other*

ORDER – 6

grounds, *U.S. Bank Nat'l Ass'n v. Bank of Am., N.A.*, 916 F.3d 143 (2d Cir. 2019). JPMC's substantial business activities in Washington are insufficient to establish general jurisdiction because JPMC, as a national banking association, engages in business in many other jurisdictions and cannot be at home in all of them. *See Daimler*, 571 U.S. at 762 n.20.

Further, JPMC's commitment to the Seattle community and charitable contributions in the state do not rise to the level of an "exceptional case." While the *Daimler* Court provided no guidance for identifying an exceptional case, lower courts have looked to whether a corporation conducts a significant proportion of its business activities in the forum state. *See Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (California court did not have general jurisdiction over French airplane manufacturer because the corporation's "California contacts are minor compared to its other worldwide contacts"). Plaintiff has not alleged that JPMC conducts a disproportionate amount of its business in Washington. The Court concludes that Plaintiffs have not established that this Court may assert general jurisdiction over JPMC.

**B. Specific Jurisdiction**

Specific jurisdiction exists when the "nature and quality" of the defendant's contacts with the forum state are significant in relation to the specific cause of action. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977). Courts apply a three-part test for specific jurisdiction: (1) the defendant must have purposely availed itself of the privileges of conducting activities in the forum, (2) the plaintiff's claims arise out of the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).

In the case of a contract dispute, a plaintiff may satisfy the first part of the test by demonstrating that the defendant "purposefully availed" itself of the privilege of doing business in the forum. *Schwarzenegger*, 374 F.3d at 802. The Court determines whether

ORDER – 7

a defendant should reasonably anticipate legal action in the forum based on its actions in the state. *Id.* The second part of the test requires a plaintiff to show that "but for" the defendant's forum-related conduct, the injury would not have occurred. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 761 (9th Cir. 1990).

When dealing with letters of credit, the Ninth Circuit has held that a beneficiary's location does not, standing alone, establish personal jurisdiction over the issuing financial institution. *See Pac. Reliant Indus. v. Amerika Samoa Bank*, 901 F.2d 735, 737–38 (9th Cir. 1990) ("We conclude that [Amerika Samoa Bank's] conduct as an issuing bank of a letter of credit does not subject it to suit in Oregon, the residence of the beneficiary and the shipping point for the ordered goods."); *H. Ray Baker, Inc. v. Associated Banking Corp.*, 592 F.2d 550, 552 (9th Cir. 1979). The Southern District of California, however, recently analyzed specific jurisdiction in the context of a letter of credit and concluded that the defendant (JPMC) purposefully availed itself of the privilege of doing business in California when it communicated and negotiated its agreement with plaintiff from its office in Los Angeles, and "but for" JPMC's communications from its California office, plaintiff would not have relied on the communications to its detriment. *Zions Bancorporation, N.A. v. JPMorgan Chase Bank, N.A.*, No. 3:20-CV-2048-AJB-JLB, 2021 WL 3406641, at *6 (S.D. Cal. Aug. 3, 2021).

Based on the current record, Plaintiff has not established that JPMC purposefully availed itself of the benefits or protections of Washington law, or that its claim is related to JPMC's activities within Washington. The letters of credit were not issued in Washington, and they required Plaintiff, as the beneficiary, to submit draw presentments to JPMC's offices in Tampa, Florida. *See* Dkt. # 28-2 at 6-7, 9; Dkt. # 28-4 at 6. All correspondence from JPMC concerning Plaintiff's presentments came from JPMC's offices in Chicago, Illinois. *See e.g.* Dkt. # 28-4 at 2. Plaintiff's principal place of business and the letter's relation to a Seattle development project appear to be the only connections to Washington. Plaintiff does not allege that any of JPMC's

ORDER – 8

communications originated from its offices in Washington, or that Plaintiff corresponded with JPMC prior to JPMC's issuance of LC#1 or LC#2.  Similarly, Plaintiff does not allege that JPMC engaged in any activity in Washington in relation to LC#1 or LC#2.  That LC#1 and LC#2 are related to a project in Seattle does not mean JPMC purposefully availed itself of the privilege of doing business in Washington. Thus, absent any additional facts, the Court concludes that it lacks specific personal jurisdiction over JPMC.

**C.  Rule 30(b)(6) Deposition**

Having granted additional jurisdictional discovery and concluded that Plaintiff has no basis for claiming personal jurisdiction over JPMC in this Court in relation to this matter, the Court finds no basis to grant further discovery or depositions.  Plaintiff has failed to establish a prima facia showing of jurisdictional facts.  "Discovery may appropriately be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  Plaintiff alleges no controverted facts.

Instead, Plaintiff makes unsupported allegations of "distrust" of JPMC.  Such allegations are insufficient to justify further discovery.  *See* Fed. R. Civ. P. 26(g)(1); *Scott v. Palmer*, No. 1:09-CV-01329-LJO, 2014 WL 6685810, at *3 (E.D. Cal. Nov. 26, 2014) (holding that "[m]ere distrust and suspicion regarding discovery responses do *not* form a legitimate basis to further challenge responses which are facially legally sufficient; and Plaintiff is entitled neither to continue demanding additional and/or different evidence in support of discovery responses already provided").  The Court thereby DENIES Plaintiff's request for a 30(b)(6) deposition of JPMC.

/ / /

/ / /

/ / /

ORDER – 9

## IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's request to re-note the motion to dismiss to allow Plaintiff to conduct a Rule 30(b)(6) deposition.  Dkt. # 27. JPMC's motion to dismiss for lack of personal jurisdiction is **GRANTED**.  Dkt. # 16.

DATED this 31st day of March, 2022.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge

ORDER – 10